FILED
JAN 1 8 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) **4:19CR051 CDP** |
| YUSAF Z. BEG, | ) ) |
| Defendant. | ) ) |

### INFORMATION

The United States Attorney charges that:

### BACKGROUND

1. The defendant Yusaf Z. Beg has been a pharmacist, licensed to practice in Missouri since about 1983. Between 1983 and 2011, the defendant worked as a pharmacist in varied settings, including at a local hospital, at the VA Medical Center, at a national chain store pharmacy, and at pharmacies in retail grocery stores.

2. Co-conspirator R.R. has been a licensed pharmacist in Missouri since in or about 2004. At all relevant times, R.R. had ownership interests in or close business ties to other pharmacies and medical testing laboratories.

3. In or about 2011, the defendant and R.R. formed St. Louis Hills Pharmacy, currently located on Chippewa Avenue in St. Louis City. At all relevant times, the defendant had a 25-30% ownership interest and R.R. had a 70-75% ownership interest in St. Louis Hills Pharmacy. At all relevant times, the defendant was the pharmacist in charge at St. Louis Hills Pharmacy.

## Relevant Medicare Provisions

4.  The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services ("CMS"), administers the Medicare Program, which is a federally funded health benefits program for the elderly and disabled. Medicare Part D provides reimbursement for prescription drugs provided to Medicare beneficiaries enrolled in Medicare Part D. Medicare reimburses for prescription drugs only if a physician or other authorized health care provider has determined that the drugs are medically necessary and has prescribed or ordered the drugs.

5.  CMS acts through fiscal agents that review claims and make payments to providers for services and supplies rendered to Medicare beneficiaries. Prescription benefit managers or plans process prescription claims for reimbursement under the Medicare Part D Program.

6.  Persons or businesses providing supplies, including prescription drugs, are called Medicare suppliers. To receive Medicare reimbursement, suppliers must make appropriate application and execute a written supplier agreement. Per the agreement, the supplier is obligated to know, understand, and follow all Medicare regulations and rules. A reimbursement claim for a prescription drug must identify, among other things, the prescriber of the medication, the date the prescription was dispensed, and the prescription number.

## Relevant Missouri Medicaid Provisions

7.  MO Healthnet administers the Missouri Medicaid Program, which is a health care benefit program jointly funded by the State of Missouri and the federal government. Missouri

Medicaid reimburses health care providers for covered services rendered to low-income or disabled Medicaid recipients. The Medicaid Program reimburses pharmacies, which provide covered drugs and other medical supplies to Medicaid recipients.

8.     A Medicaid provider must enter into a written agreement to receive reimbursement for medical services or supplies provided to Medicaid recipients and must agree to abide by Medicaid regulations in rendering and billing for those services and supplies.

9.     The Medicaid Program requires that all prescriptions for eligible participants be filled in accordance with the Missouri statutes regulating pharmacies and pharmacists.

10.    Medicaid providers must retain, for five years from the date of service, fiscal and medical records that reflect and fully document services and supplies billed to Medicaid, and must furnish or make the records available for inspection or audit by the Department of Social Services or its representatives upon request.

### Relevant Tricare Provisions

11.    Tricare is a federally funded health care benefit program that reimburses providers and suppliers for health care services and supplies provided to active, retired, reserve, guard, and uniformed service members and their families. The Defense Health Agency ("DHA") has management responsibility for Tricare and receives, processes, and pays claims on behalf of Tricare.

12.    If an active duty military service member receives a prescription for a compounded medication, the patient does not pay a co-payment for the medication. Tricare covers the entire cost of compounded medications for active military service members. All other Tricare beneficiaries pay a fixed co-payment of seventeen dollars per prescription and Tricare

3

pays the balance of the cost of the compounded medication.

## St. Louis Hills Pharmacy's Participation in Federal Health Benefit Programs

13. In or about December 2011, the defendant, as an owner and manager of St. Louis Hills Pharmacy, completed a Medicare enrollment application for St. Louis Hills Pharmacy. By signing the "Certification Statement" in Section 15 of the enrollment application, the defendant acknowledged that he knew he could be prosecuted if he deliberately provided false information to Medicare. The Certification Statement provides in part:

> I have read and understand the Penalties for Falsifying Information, as printed in this application. I understand that any deliberate omission, misrepresentation, or falsification of any information contained in this application or contained in any communication supplying information to Medicare . . . may be punishable by criminal, civil, or administrative penalties . . .
>
> I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the **Federal anti-kickback statute** and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare. . . .
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity. (emphasis added)

14. Notably, the Certification Statement expressly stated that Medicare reimbursement was conditioned upon compliance with the "Federal anti-kickback statute" and other applicable laws and regulations. However, even before signing the Certification Statement, the defendant had received this information. Having practiced in the health care field for many years prior to 2011, the defendant and co-conspirator R.R. had received information and

guidance concerning the federal anti-kickback statute.

15. On or about November 18, 2011, the defendant completed the enrollment application for St. Louis Hills Pharmacy to participate in the Tricare Program. On or about December 6, 2011, the defendant completed an enrollment application for St. Louis Hills Pharmacy to participate in the Medicaid Program. The defendant and St. Louis Hills Pharmacy agreed in these applications and related documents that St. Louis Hills Pharmacy would comply with all relevant Medicaid and Tricare rules and regulations and would not submit false and fraudulent information or reimbursement claims.

## COUNT I
## CONSPIRACY
## 18 U.S.C. § 371

16. Paragraphs 1 to 15 are incorporated by reference as if fully set out herein.

17. From in or about May 2013 to in or about December 2016, in the Eastern District of Missouri and elsewhere,

### YUSAF Z. BEG,

the defendant herein, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together, and with each other, to commit offenses against the United States, that is: (a) to pay illegal kickbacks in return for and to induce a doctor to refer and send prescriptions to St. Louis Hills Pharmacy, in violation of 42U.S.C. § 1320a-7b(b)(1); and (b) to routinely waive co-payments for patients and to create false and fraudulent documents to conceal the routine waiver of co-payments, in violation 18 U.S.C. §§ 1035, 1001, and 1347.

5

## Manner and Means of the Conspiracy

Illegal Kickbacks to Doctor T.S.

18. It was part of the conspiracy that the defendant and co-conspirator R.R. paid illegal kickbacks to the son of Dr. T.S. to induce Dr. T.S. to continue making prescription referrals to St. Louis Hills Pharmacy. At the direction of co-conspirator R.R., the defendant wrote two checks to the son of Dr. T.S., one check in the amount of $5,000 on August 22, 2013 and one in the amount of $6,338.35 on October 16, 2013.

19. On or about October 16, 2013, the defendant and co-conspirator R.R. discussed whether the $6,338.35 check was an illegal kickback. After this discussion, the defendant identified this check as a "loan" on the check stub, in order to conceal the true nature of the check.

## Compounded Drugs and Illegal Routine Waiver of Co-Payments

20. The Food and Drug Administration ("FDA") defines compounding as a practice in which a licensed pharmacist, a licensed physician, or in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient. As with all prescription drugs, a doctor must prescribe compounded drugs for his or her patients. Compounded drugs are generally more expensive than non-compounded drugs.

21. It was part of the conspiracy that co-conspirator R.R. and marketers for St. Louis Hills Pharmacy encouraged and induced doctors to order compounded drugs, including pain creams, for their patients.

22. It was further part of the conspiracy that St. Louis Hills Pharmacy shipped

expensive compounded drugs to patients, some of whom had informed the defendant and St. Louis Hills Pharmacy employees that they did not want the drugs.

23. It was further part of the conspiracy that St. Louis Hills Pharmacy routinely waived patient co-payments. Patients generally must pay a portion of the cost ("co-pay" or "co-payment") of a prescription drug. Medicare, Medicaid, and Tricare does not permit the routine waiver of co- payments.

24. It was further part of the conspiracy that co-conspirator R.R. instructed the defendant and other employees of St. Louis Hills Pharmacy not to charge co-payments. The defendant complied with this instruction and in turn directed other employees not to charge co-payments.

25. One purpose of the waivers was to give the patients a financial benefit--that is, the forgiveness of a debt--in order to induce the patients to obtain their prescription drugs from St. Louis Hills Pharmacy.

26. St. Louis Hills Pharmacy derived the bulk of its revenue from compounded drugs. In some instances, St. Louis Hills Pharmacy charged several thousand dollars for a single prescription of a compounded drug, when the cost to St. Louis Hills Pharmacy was a few hundred dollars.

27. Patient K.W. is an example of a patient who received unwanted compounded pain creams from St. Louis Hills Pharmacy. Patient K.W. received pain cream from St. Louis Hills Pharmacy on five separate occasions between May 2013 and January 2014. After unexpectedly receiving the pain cream in the mail from St. Louis Hills Pharmacy, Patient K.W. told St. Louis Hills Pharmacy that she did not want the pain cream. Nonetheless, Patient K.W. continued to

receive the pain cream.

28.     In an attempt to persuade Patient K.W. to accept the expensive pain creams, employees of St. Louis Hills Pharmacy told Patient K.W. that St. Louis Hills Pharmacy would not require him or her to pay a co-payment. In fact, St. Louis Hills Pharmacy did waive the co-payment and did not charge Patient K.W. a co-payment. However, the defendant and co-conspirator R.R. did not want insurers to know that St. Louis Hills Pharmacy routinely waived co-payments for Patient K.W.

29.     To conceal this fact, on or about April 11, 2014, St. Louis Hills Pharmacy created false and fraudulent documents that showed that Patient K.W. had paid a $1,420.07 co-payment.

All in violation of Title 18, United States Code, Section 371.

## COUNT II
## HEALTH CARE FRAUD SCHEME
## 18 U.S.C. § 1347

30.     Paragraphs 1 to 15 and 20 to 29 are incorporated by reference as if fully set out herein.

31.     From in or about May 2013 to in or about December 2016, the defendant and his co-schemers knowingly and willfully executed a scheme and artifice to defraud health care benefit programs.

32.     It was part of the scheme and artifice to defraud that the defendant and his co-schemers submitted and caused the submission of reimbursement claims for prescription refills that patients had not requested or had expressly stated that they did not want.

33.     On or about January 27, 2014, in St. Louis City, within the Eastern District of Missouri,

**YUSAF Z. BEG,**

the defendant herein, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud a health care benefit program, in connection with the delivery of and payment for health care benefits, items, services services, that is, the defendant and his co-schemers submitted or caused the submission of a false and fraudulent reimbursement claim for a prescription drug for Patient K.W. to the Medicare Program.

All in violation of Title 18, United States Code, Section 1347(a)(1) and Title 18, United States Code, Section 2.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

9

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Dorothy L. McMurtry, Assistant United States Attorney for the Eastern District of Missouri, being duly sworn, do say that the foregoing information is true as I verily believe.

*Dorothy L. McMurtry* (signature)
DOROTHY L. McMURTRY, #37727MO

Subscribed and sworn to before me this 11 day of January, 2019.

*Gregory Linhares* (signature)
CLERK, U.S. DISTRICT COURT

By: *Elizabeth Kuhlman* (signature)
DEPUTY CLERK